IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PATRICIA SMITH,                          §
          Plaintiff,               §
                                        §
v.                                       §          CIVIL ACTION NO. H-06-3278
                                        §
JOHN E. POTTER, Postmaster General, §
United States Postal Service,            §
         Defendant.               §

## MEMORANDUM AND ORDER

Pending before the Court in this employment discrimination case is a Motion for

Summary Judgment [Doc. # 27] filed by Defendant John E. Potter, Postmaster General

of the United States Postal Service ("USPS").  Plaintiff Patricia Smith has responded

[Doc. # 30] and the USPS has replied [Doc. # 32].  Upon review of the parties'

submissions, all pertinent matters of record, and applicable law, the Court concludes

that Defendant's motion should be **granted**.

## I.     FACTUAL BACKGROUND

Plaintiff Patricia Smith, a fifty-seven year old African-American woman, was

formerly employed as a mail carrier with the USPS.  On April 5, 2005, two postal

inspectors, responding to alleged complaints by customers along Smith's delivery route,

observed her throwing several pieces of undelivered mail into a trash can, in violation

of USPS regulations.  On April 6, 2005, Smith was again witnessed throwing mail into the trash.[1]  That day she also was seen permitting a non-USPS employee to place mail into mail boxes, which was another violation of USPS regulations.

Smith was interviewed regarding these issues and appeared to admit to the wrongful conduct.[2]  The USPS placed her on emergency suspension without pay on April 6, 2005 and terminated her employment on May 16, 2005.

Upon being placed on suspension, Smith, through her Union, the National Association of Letter Carriers Local Branch 283, filed a grievance.   A mediator

---

[1]  In addition to observing Smith's conduct, USPS investigators immediately photographed and inventoried the mail she allegedly threw into the trash.  On April 5, investigators recovered fifty-three Houston Chronicles, sixteen "Standard A" mail pieces, and two "First Class'" pieces.  *See* Defendant's Motion for Summary Judgment [Doc. # 27], Ex. D: "Investigative Memorandum," ¶ 2.  On April 6, they recovered twenty-eight "Advo circular cards," eleven "Standard A" mail pieces, and two "Advo circulars."  *See id.*, ¶ 4; *see also id.*, Ex. G: "Notice of Removal."

[2]  After being interviewed by USPS inspectors, Smith gave a sworn written statement in which she stated:

> I was in a rush to come in and pick up my split.  I left my nixie [undeliverable mail that is returned to the post office and mailed back to the sender] out there and [Houston] Chronicles in the trash, but was told by Mr. Burton [Plaintiff's supervisor] that I need to slow down.  I could have placed the mail in the trash, on some days I sit [sic] it on the newspaper stand[.]  Mrs. Laurie Andrew [an apartment manager at apartments on Plaintiff's route] was placing newsletters in the box . . . and was telling me to pull out the nixie where my customers had moved out.  Today was just a rush, rush day[. O]n a normal day I would usually just bring back all nixie and [C]hronicle[s] . . . and return to the station.

Defendant's Motion for Summary Judgment [Doc. # 27], Ex. E: "Statement of Patricia Smith."

subsequently found in Smith's favor, holding that the USPS did not have sufficient evidence to justify her suspension and awarding Smith back pay and benefits.[3]  The Union did not pursue a grievance regarding Smith's termination and there is no indication that it was asked timely to do so.[4]

While Smith's grievance was pending, she filed a complaint with the Equal Employment Opportunity Office of the USPS ("EEO Office"), alleging that she was suspended and terminated due to her age, race, and sex, and in retaliation for EEO complaints she filed in the 1990s.  The EEO Office investigated Smith's complaints and found in the USPS's favor.[5]  Smith then filed this lawsuit, alleging various claims related to her removal from the USPS.

---

[3]     *See* Response to Defendant's Motion for Summary Judgment [Doc. # 30], Ex. B: "Arbitration Award."  The arbitrator did not find that Smith was innocent of the alleged wrongdoing, did not consider any claims of discrimination, and did not discuss the USPS's assertion that Smith allowed a non-USPS employee to place mail in mail boxes in violation of USPS regulations—an issue that also bore on the USPS's decision to discipline her.  *See id.*; *see also*  Defendant's Motion for Summary Judgment [Doc. # 27], Ex. G:  "Notice of Removal."

[4]     The Union was originally a party to this suit, charged with allegedly interfering with Smith's "guaranteed union rights" by failing to file a grievance on her behalf challenging her termination.  *See* Original Complaint [Doc. # 1], at 6–7.  The Court later granted the Union's Motion to Dismiss [Doc. # 15], holding that Smith's claims were barred by the applicable statute of limitations.  *See* Memorandum and Order of March 6, 2007 [Doc. # 21]; *see also* Memorandum and Order of April 9, 2007 [Doc. # 26] (denying Plaintiff's Motion for Reconsideration of the March 6, 2007 Memorandum and Order).

[5]     *See* Original Complaint [Doc. # 1], Ex. A:  "Final Agency Decision."

## II.   **LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the

non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913).  However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response.  *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond*

*Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case."  *Id.*  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## III.   ANALYSIS

### A.   Discrimination, Retaliation, Harassment, and Wrongful Termination Claims

In her first two claims for relief, Smith alleges, under various theories, that she

was subjected to unlawful discrimination by the USPS.  The legal distinction between her first and second "causes of action" is not apparent.  In each, Smith appears to conflate three theories—disparate treatment, retaliation, and hostile work environment/ harassment.  Because Smith alleges elsewhere in her Complaint that she "received disparate treatment, that she was harassed and discriminated against, and retaliated against and ultimately terminated,"[6] the Court construes Smith's Complaint as alleging each of these distinct claims, which will be analyzed in turn.

## 1.    Disparate Treatment

Smith claims that the USPS unlawfully discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when it allegedly suspended and terminated her because of her age, race, and sex.

In order to overcome Defendant's summary judgment motion, Smith must raise a genuine issue of material fact whether the USPS engaged in unlawful discrimination. *See* FED. R. CIV. P. 56(c).  Unlawful discrimination under both the ADEA and Title VII may be established through either direct or circumstantial evidence.    *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (ADEA); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (Title VII).  Because Smith offers no direct evidence of

---

[6]     Original Complaint [Doc. # 1], at 3, § IV, ¶ 2.

disparate treatment, her claim is analyzed using the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).

Under this test, a plaintiff must initially establish a *prima facie* case of discrimination, which raises a presumption of discrimination. *Alvarado*, 492 F.3d at 611. If successful, the burden then shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its actions. *Okoye*, 245 F.3d at 512; *see also Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006). The burden on the defendant at this stage "'is one of production, not persuasion . . . [and] can involve no credibility assessment.'" *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)). If the defendant sustains its burden, "the presumption of discrimination dissipates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). The burden then "shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's

protected characteristic." *Alvarado*, 492 F.3d at 611(citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).  "The plaintiff bears the ultimate burden of persuading the trier of fact . . . that the employer intentionally discriminated against her because of her protected status." *Wallace*, 271 F.3d at 219–20 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Cheatham*, 465 F.3d at 582.

In a work rule-violation case, such as this, "a Title VII plaintiff may establish a *prima facie* case [of discrimination] by showing 'either that [s]he did not violate the rule or that, if [s]he did, [employees outside her protected class] who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1986, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)).

Although at first glance, Smith appears to suggest that she did not violate the USPS rules for which she was allegedly suspended and terminated, a thorough reading of her Response reveals that Smith never denies having engaged in the wrongful conduct.  Instead, she merely cites the findings of the arbitrator assigned to adjudicate the Union-initiated grievance regarding her suspension, who found insufficient evidence to justify the USPS's decision to place Smith on emergency suspension.  As noted in note 3, *supra*, the arbitrator did not find that Smith was innocent of the alleged

wrongdoing, did not consider any claims of discrimination, and did not even mention the USPS's assertion that Smith allowed a non-USPS employee to place mail in mail boxes in violation of USPS regulations.[7]

Moreover, the arbitrator's findings are not binding on this Court. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59–60 (1974) ("[An] arbital decision may be admitted as evidence [in a Title VII case] and accorded such weight as the court deems appropriate."); *McNair v. United States Postal Service*, 768 F.2d 730, 736 (5th Cir. 1985) ("[F]ederal courts are not required to give preclusive effect to arbitration awards when an aggrieved employee asserts an independent cause of action, though it arises from the same conduct submitted to the grievance process, for violation of certain federal statutes."); *see also McDonald v. W. Branch*, 466 U.S. 284 (1984) (discussing at length several reasons why "a federal court should not afford res judicata or collateral-estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement").

More importantly, Smith's argument that Defendant cannot prove that she engaged in wrongdoing fails to appreciate that *Smith* bears the burden of establishing a *prima facie* case. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 n.1 (5th Cir. 2005) ("[T]he burden of persuasion [in an employment discrimination case]

---

[7]    *See* Response to Defendant's Motion for Summary Judgment [Doc. # 30], Ex. B: "Arbitration Award."

'remains at all times with the plaintiff.'" (quoting *Reeves*, 530 U.S. at 143)). Construing the arbitrator's award in the light most favorable to Smith, Smith fails to provide proof that the arbitrator found her innocent of the wrongdoing alleged by the USPS.   Further, Smith has offered no argument—much less any evidence—to demonstrate that she did not engage in the conduct for which she was suspended and terminated.  Thus, she has failed to raise a disputed question of fact on this issue.

However, Smith may also establish a *prima facie* case of discrimination by demonstrating "that [s]he:  (1) is a member of a protected class, (2) was qualified for [her] position, (3) was subject to an adverse employment action, and (4) . . . 'that others similarly situated [but outside the protected class] were treated more favorably.'" *Okoye*, 245 F.3d at 512–13 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)); *see also Alvarado*, 492 F.3d at 611; *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003).  The parties do not dispute that Smith, a fifty-seven year old African-American woman, is a member of a protected class.  The parties also do not contest that Smith suffered an adverse employment action when she was suspended without pay and terminated.  Although Defendant states that Smith "cannot show that she was qualified for her position" as a mail carrier,[8] the Court assumes, for purposes of this discussion, that Smith, a twenty-five

---

[8]      *See* Defendant's Motion for Summary Judgment [Doc. # 27], at 7, 8.

year employee of the USPS, was qualified for her position.  Thus, the Court looks to whether Smith has presented sufficient evidence on the fourth element of a *prima facie* case of age, race, and sex discrimination to survive summary judgment.

To establish this element, a plaintiff may present "circumstantial evidence that she has been treated differently than similarly situated non-members of the protected class." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000) (citing *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996)). To satisfy the "similarly situated" requirement, the situations of the plaintiff and the non-protected class member must be more than similar, they must be "nearly identical."  *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004).  Thus, Smith must demonstrate "'that the misconduct for which she was discharged was nearly identical to that engaged in by [an] employee [outside Smith's protected classes] whom the company retained.'" *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).  Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decisions," *Perez*, 395 F.3d at 209, and the comparator employees' position in organization—*e.g.*, job title, duties, supervisor— should be roughly the same.  *See, e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 207–08

(5th Cir. 2005); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

In this case, Smith alleges that comparator employees exist, but she has provided no evidence of them.[9]  Moreover, even construing all evidence of record in Smith's favor, the evidence Smith points to in support of her claim is, at most, a scintilla that is insufficient to raise a question of material fact on this issue.  Smith's assertion— without meaningful admissible supporting evidence—is not enough to defeat the USPS's motion for summary judgment.  The burden remains on Smith to establish a *prima facie* case of discrimination with admissible evidence and not mere assertions that evidence may exist.  *See Little*, 37 F.3d at 1075 ("[The Court does] not, . . . in the absence of proof assume that the nonmoving party could or would prove the necessary facts [to overcome a motion for summary judgment]."); *see also Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) ("[T]he nonmovant cannot satisfy

---

[9]    Smith argues that an inference of discrimination should arise solely due to the alleged admissions of a USPS supervisor that "there are no other employees under his supervision who were issued a notice of removal under the same or similar circumstances, and that there were no other employees under his supervision who were not issued a notice of removal under the same or similar circumstances.  *See* Response to Defendant's Motion for Summary Judgment [Doc. # 30], at 6.  In making this argument, Smith refers to a sworn questionnaire in which USPS Manager Chester Smith responds "no" to the questions: "Are there any other employees under your supervision who were given an emergency suspension under the same or similar circumstances [as Smith]?" and "Are there any other employees under your supervision who were not given an emergency suspension under the same or similar circumstances [as Smith]?"  *See* Defendant's Motion for Summary Judgment [Doc. # 27], Ex. B:  "Affidavit of USPS Station Manager Chester Smith," at 1–2.  In the context of the questionnaire as a whole, Chester Smith's position appears to be that no other employees engaged in similar conduct warranting discipline, not that other employees engaged in wrongdoing but were not disciplined.  However, Plaintiff Smith, as the nonmoving party, is entitled to all justifiable inferences drawn in her favor.  *See Morris*, 144 F.3d at 380.

[his] burden [on summary judgment] with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").  After eight months of discovery,[10] Smith has provided no actual evidence that comparator employees exist.[11] Thus, Smith has failed to establish that other similarly situated USPS employees not in her protected classes may have received more favorable treatment than she received and therefore, she has failed to establish a *prima facie* case of discrimination on the basis of her age, race, or sex.

However, even if Smith could successfully establish her *prima facie* case, she has not adequately responded to the USPS's "legitimate, non-discriminatory reason for its decision to [suspend and] terminate [her]," *Rachid*, 376 F.3d at 312, namely, that the USPS had a reasonable, good faith belief that Smith violated USPS regulations. *See Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. 1981) ("[A] mistaken but good-faith belief that an employee has violated the employer's rule is sufficient to rebut the *McDonnell Douglas* inference that the employee was discharged

---

[10]     *See* Scheduling Order [Doc. # 18].

[11]     Smith's lack of evidence is even more apparent, given that *Defendant*, in exhibits attached to its Motion, names two USPS employees who may potentially have been comparators.  *See* Defendant's Motion for Summary Judgment [Doc. # 27], at Ex. B:  "Affidavit of USPS Station Manager Chester Smith," at 7 (discussing USPS employees Dwight Murphy and James Lewis); Ex. C: "Affidavit of USPS Supervisor Alfred J. Burton," at 7 (same).  Chester Smith and Alfred Burton deny knowledge of the circumstances surrounding Murphy and Lewis and it is unclear how they became implicated in this case.  Smith mentions neither employee in her Original Complaint or her Response.

for impermissible reasons."); *see also Mayberry*, 55 F.3d at 1090–91 (violations of an employer's "Code of Conduct" legitimate grounds for termination).   The summary judgment record shows that the USPS undertook a thorough investigation of Smith's alleged violations, which included personal observations of her wrongdoing by USPS inspectors and inspectors' interview with Smith during which she gave a sworn written statement in which she essentially admitted the allegations.   Only then did the USPS conclude that Smith had engaged in conduct warranting suspension and dismissal.

Smith suggests that the USPS fabricated the grounds for which it initiated its initial investigation of her.   According to Smith, the USPS claimed that an individual named Chantilly Nelson, who allegedly lived in apartments on Smith's delivery route, made complaints about Smith's  performance as a mail carrier.[12]  Smith asserts that no such person exists and appears to conclude that this is evidence of pretext by the USPS. In support of her position, Smith references two questionnaires allegedly completed by employees of the apartment complex at which Smith was witnessed violating USPS regulations.   The questionnaire answers purport to state that no one named Chantilly Nelson was ever a tenant.[13]  However, this evidence is inadmissible. The questionnaires are unsworn, unauthenticated, and inexplicably signed by the same person.   There is

---

[12]       *See* Response [Doc. # 30], at 6.

[13]       *See id.*, at Ex. D:  "Apartment Manager Questions," Ex. E:  "Assistant Manager Questions."

no indication that they were signed under penalty of perjury, *see* 28 U.S.C. § 1746, and they contain no other indicia of reliability.  *See* FED. R. EVID. 807.

Moreover, the evidence fails to demonstrate that the USPS was motivated by discriminatory animus when it initiated its investigation, suspended Smith, and then terminated her employment.  *See Laxton*, 333 F.3d at 579 ("[T]he plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.  The plaintiff must rebut each nondiscriminatory reason articulated by the employer.  A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." (internal citations omitted)).  Indeed, even if the USPS's alleged reasons for initiating its investigation of Smith were untrue, employers are entitled to actively supervise employees and Smith has failed to demonstrate that the USPS did not have adequate grounds to discipline her once USPS inspectors observed her violating USPS regulations.[14]  There is no evidence that the

---

[14]   Smith argues that the reasons stated by the USPS for initiating its investigation of here demonstrate pretext.  However, to the extent Smith suggests that she was subject to an adverse employment action when she became the subject of a USPS investigation, such an argument lacks merit.  In ADEA and Title VII cases, an adverse employment action must be an "'ultimate employment decision . . . such as hiring, granting leave, discharging, promoting, and compensating.'"  *Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004) (quoting *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995)).  "An employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action under Title VII."  *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Hunt v. Rapides Health Care Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001)).  In (continued...)

USPS, and the decisionmakers who ordered Smith's suspension and termination, did not in fact believe, based on their investigation, that she had violated USPS regulations warranting disciplinary action.  Smith's suggestion that the USPS's investigation was mere pretext for discriminatory motive on its part simply finds no support in the record.

At most, Smith arguably has presented evidence that she believes she suffered some sort of discrimination.  However, "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief."[15]  *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).  Smith has failed to establish a *prima facie*

---

[14]     (...continued)
fact, the Fifth Circuit has expressly "declined to expand the list of actionable actions," *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998), in order to ensure that the courts not become "enmesh[ed] . . . in 'relatively trivial matters.'"  *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (quoting *Dorsett v. Bd. of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991)).  To that end, the Fifth Circuit has held that "investigating alleged violations of departmental policies and making purportedly false accusations are not adverse employment actions." *Breaux*, 205 F.3d at 158 (citing *Pierce v. Tex. Dep't of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994); *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999)).  Although *Breaux*, *Pierce*, and *Colson* were decided primarily in the context of § 1983 claims, they apply with equal force to ADEA and Title VII claims because, if anything, the definition of an adverse employment action may be *broader* under § 1983 than under the ADEA and Title VII.  *See Alvarado*, 492 F.3d at 613 (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)).

[15]     Indeed, while Smith alleges in her Complaint that discriminatory animus lays at the heart of the USPS's decision to terminate her, she states in her Response that real reason she was terminated was because she was nearing retirement and the USPS wanted to avoid  the burden of paying her retirement benefits.  *See* Response [Doc. # 30], at 7.  Absent evidence of a discriminatory motive, this is not actionable under the ADEA or Title VII.  *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) ("[Even if Plaintiff's] fast-approaching eligibility for retirement benefits motivated [his employer's] decision [to terminate Plaintiff,] . . . that would not be sufficient alone to support a finding of age discrimination because the ADEA prohibits discrimination on the basis of age, not salary or seniority.").

case of age, race, or sex discrimination.  Moreover, assuming *arguendo* that she has succeeded in establishing a her *prima facie* case, Smith has provided insufficient evidence to raise a question of fact whether the USPS's stated, lawful reasons for terminating her were pretext for unlawful discrimination.  Thus, Defendant is entitled to summary judgment on Smith's disparate treatment claims under the ADEA, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

### 2.  Retaliation

Smith's claim that the USPS suspended and terminated her in retaliation for her involvement in a protected activity under Title VII also fails.  Title VII retaliation claims are governed by the same *McDonnell Douglas* burden-shifting test applied to Smith's disparate treatment claim in Section III.A.1, *supra*.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).  "Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose."  *Id.*  However, the employee must first demonstrate a *prima facie* case of retaliation.  *Id.* at 607.  "To establish a *prima facie* case of retaliation, an employee must demonstrate that (1) [s]he engaged in an activity that Title VII protects; (2) [s]he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the

adverse employment action." *Lemaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (citing *Harvill v. Westward Commc'ns, LLC.*, 433 F.3d 428, 439 (5th Cir. 2005)).

"Under Title VII, an employee has engaged in protected activity if she has (1) 'opposed any practice made an unlawful employment practice [by Title VII],' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–428 (5th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)). Between 1994 and 1999, Smith filed six complaints with the Postal Service's Equal Employment Opportunity office, four of which—filed in 1994, 1995, and 1996—alleged "non-sexual harassment."[16] Thus, the parties do not dispute that Smith engaged in protected activity or that she suffered an adverse employment action when she was later suspended and terminated.

However, aside from the evidence showing that Smith made complaints to the USPS's EEO Office, the only argument she raises in support of her retaliation claim is her assertion that because her supervisor admitted knowledge of at least one of her

---

[16]   *See id.*, Ex. A:  "EEO Complaints Filed."  Smith offers no details about the content of these complaints.

complaints, the decision to suspend and terminate her was necessarily retaliatory.[17]
This is insufficient to demonstrate the causal link required to establish a *prima facie*
case of retaliation. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)
("A 'causal link' is established when the evidence demonstrates that the employer's
decision to terminate was based in part on knowledge of the employee's protected
activity . . . [such as where] the plaintiff shows that the employment decision and [her]
protected activity were not wholly unrelated." (internal citations omitted)).  Smith has
offered no evidence of the content of her prior complaints or the identity of the alleged
wrongdoers.  Thus, there is no evidence that those complaints and her suspension and
termination are at all related, much less that the USPS's disciplinary decisions at issue
in this case were based on knowledge of those complaints.

Moreover, Smith's complaints were made between six and ten years prior to her
suspension and termination.  Thus, while a causal connection may be inferred from
evidence that the protected conduct was closely followed by the adverse employment
action, courts make clear that "the temporal proximity must be 'very close.'"  *Clark
Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001).  Indeed, the Supreme Court
has held that "[an adverse employment a]ction taken . . . 20 months [after the employee

---

[17]     *See id.*, at 8; *see also* Defendant's Motion for Summary Judgment [Doc. # 27], Ex. B:
"Affidavit of USPS Manager Chester Smith," at 5.  Chester Smith admits that he was aware
that Smith had filed previous EEO complaints, but states that he cannot recall any details of
the complaint(s).  *Id.*

engaged in protected activity] suggests, by itself, no causality at all." *Id.* at 274.

Therefore, Smith has not presented evidence to establish a *prima facie* case of retaliation under Title VII and the USPS is entitled to summary judgment on this claim.

### 3. Hostile Work Environment and Harassment

A party "may establish a violation of Title VII by proving discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999). Smith claims that she was subjected to severe and pervasive harassment during her tenure with the USPS that ultimately led to her termination.[18]

However, as a precondition to filing suit under Title VII, a federal employee, such as Smith, must exhaust all administrative remedies. *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998). Thus, "[i]nitially, the complainant must seek relief in the agency that has allegedly discriminated against [her]." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976). Defendant contends that Smith did not raise a hostile work environment or harassment claim in her EEO complaint that precipitated this lawsuit and that therefore, that the Court lacks jurisdiction over this claim.

"[F]ailure to exhaust administrative remedies [in a Title VII case] is an

---

[18]     *See* Original Complaint [Doc. # 1], at 4–6.

affirmative defense . . . [.  Thus,] the defendant bears the burden of pleading and

proving that the plaintiff has failed to exhaust administrative remedies."  *See Enguita*

*v. Neoplan USA Corp.*, 390 F. Supp. 2d 616, 623 (S.D. Tex. 2005) (quoting *Williams*

*v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)).  As in the present case, when a

defendant moves for summary judgment on the basis of an affirmative defense, "it must

adduce evidence to support each element of its defenses and demonstrate the lack of

any genuine issue of material fact with regard thereto."  *Rushing v. Kan. City S. Ry.*

*Co.*, 185 F.3d  496, 505 (5th Cir. 1999); *Enguita*, 390 F. Supp. 2d at 619.

In support of its claim that Smith's hostile work environment and harassment

claims were not properly raised before the EEO Office, the USPS has provided the

Court with a copy of the EEO Office's "Acceptance of Complaint" in which the EEO

Office defined the claims raised by Smith as:

> Specific Claims:
> (1)     On April 6, 2005 she was given an emergency suspension; and
> (2)     On May 16, 2005 she was issued a Notice of Removal.
>
> Type(s) of Discrimination:
>         race (Black); color (Black); sex (Female); age (DOB 10/4/52)[;] and
>         retaliation (Prior EEO Activity)[19]

This document further states that if Smith "[did] not agree with the defined

issue(s)," she was to "provide [the EEO Office] with sufficient reasons to substantiate

---

[19]     *See* Defendant's Motion for Summary Judgment [Doc. # 27], Ex. H:  "Acceptance of
         Complaint," at 1.

[her] objections, in writing, within seven (7) calendar days . . . ."[20]  The EEO Office subsequently ruled in favor of the USPS and held that Smith "failed to prove that [she] was subjected to discrimination" when she was suspended and terminated.[21]  The EEO Office's decision makes no mention of a hostile work environment or harassment claim.[22]

In response to Defendant's arguments, Smith merely quotes her EEO complaint, in which she stated:

> On April 7, [20]05, I was given an emergency suspension pending investigation.  Later[,] on May 16, 2005, I was given a notice of removal and I believe this is only the most recent incident in a series of discriminatory action taken against me because I am a black African American female, over 40 years of age.  In the past I have been issued a 7-day suspension, had it changed to a letter of warning 204-B Anderson and management did not remove it as agreed.  I was then subjected to a secret investigation by postal inspectors, without due process of law.  I was also investigated by Station Manager Chester Smith during the suspension period, that in itself is a violation of my civil rights, and constitutional rights.  I was then put on immediate suspension and removed from the postal service.  These action [sic] was planned, results of discriminatory intent to create a hostile work environment.[23]

No other arguments are asserted by Smith in response to Defendant's exhaustion

---

[20]     *Id.*

[21]     Response [Doc. # 30], Ex. A:  "Final Agency Decision," at 8.

[22]     *See id.*, at 1–9.

[23]     Defendant's Motion for Summary Judgment [Doc. # 27], Ex. A:  "EEO Complaint of Discrimination in the Postal Service."

argument.

Smith did not raise a hostile work environment or harassment claim before the EEO Office in connection with the EEO complaint associated with this lawsuit.  Her failure to do so strips this Court of authority to consider this cause of action.  *See Randel*, 157 F.3d at 395 (citing *Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990)).  To the extent Smith seeks to rely on EEO complaints she filed in the 1990s in which she may have raised complaints of harassment, the statute of limitations has long since expired on those claims.  *See Espinoza v. Missouri P. R.R. Co.*, 754 F.2d 1247, 1248–49 n.1 (5th Cir. 1985) (quoting 42 U.S.C. § 2000e-5(f)(1)) ("[Title VII] provides that, if the [EEO] dismisses a charge . . . 'the [EEO] . . . shall so notify the person aggrieved and within *ninety days after the giving of such notice* a civil action may be brought against the respondent named in the charge. . . . [T]he ninety day requirement is akin to a statute of limitations.") (emphasis in original)).  In any event, on the merits of Smith's hostile work environment and harassment claims, the USPS has shown itself entitled to summary judgment.

A successful hostile work environment claim requires that the plaintiff prove five elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that

the employer knew or should have known of the harassment and did not take proper remedial action." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999).  The burden on a plaintiff to demonstrate actionable conduct is high.  "Title VII does not prohibit all verbal or physical harassment in the workplace," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), and is "only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace."  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996); *see also Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir. 1982) (holding that a Title VII violation may be found where the workplace is "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers").

Smith offers no evidence in support of her hostile work environment and harassment claims.  She relies merely on conclusory declarations in a "statement" attached to her Response that she "suffered  continuous harassment . . . between the years 1993 and 2005, as well as since that date, while working at the United States Postal Service."[24]  She offers no details of the alleged harassment.  These vague assertions are not admissible evidence sufficient to defeat summary judgment and

---

[24]     Response [Doc. # 30], Ex. F:  "Statement of Patricia Smith in Support of her Response to Summary Judgment," ¶ 13.  Smith's statement is not sworn, but does state that it was made under penalty of perjury.

Smith's conclusory allegations are wholly insufficient to demonstrate the existence of an issue of fact on this claim.  *See Little*, 37 F.3d at 1075; *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

Thus, because Smith has failed to exhaust administrative remedies and, further, has failed to produce admissible evidence in support of her hostile work environment and harassment claims, the USPS is entitled to summary judgment on these claims.

### B.    Breach of Contract Claim

In her "Third Cause of Action," Smith alleges that "Defendant USPS breached the collective bargaining agreement as it pertains to Plaintiff."[25]  Smith further alleges that her Union "breached its contractual duty to represent Plaintiff" by failing to file a grievance on her behalf challenging her termination.[26]  On Motion, the Court dismissed the Union from this suit.[27]  It is unclear whether Smith still intends to pursue this claim against the USPS.  The USPS raised arguments in support of summary judgment on this claim, but Smith did not respond.  For this reason, the Court concludes that Smith has abandoned her breach of contract claim against the USPS.[28]

---

[25]    Original Complaint [Doc. # 1], at 6, § VII, ¶ 2.

[26]    *Id.*, at 6, § VII, ¶ 3.

[27]    *See supra* note 3.

[28]    The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal.  *Lookingbill v. Cockrell*, 293 F.3d
(continued...)

However, even if Smith intends to prosecute the breach of contract claim against the USPS, the claim fails.  First, Smith fails to identify in her complaint or her response any contract she had with the USPS that was breached in connection with her termination and she does not provide the Court with a copy of any such contract. Second, if Smith is alleging breaches of the collective bargaining agreement in place with the USPS, her claim is time-barred.  Such a claim is in substance a hybrid action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  *See Gibson v. U.S. Postal Service*, 380 F.3d 886, 888 (5th Cir. 2004).  "Hybrid § 301 actions are comprised of two elements:  1) an allegation that the employer breached the collective bargaining agreement; and 2) an allegation that the union breached its duty of fair representation."[29]  *Id.* (citing *Thomas v. LTV Corp.*, 39 F.3d 611, 621 (5th Cir. 1994)). Although Smith has made the requisite allegations, she failed to assert this claim within the applicable six-month statute of limitations for hybrid claims.  *See Thomas*, 39 F.3d

---

[28]     (...continued)
256, 264 (5th Cir. 2002) (citing *Dowthitt v. Johnson*, 230 F.3d 733, 747 n.16 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999)).  By analogy, failure to brief an argument in this district court waives that argument in that court.

[29]     Although Smith captioned her claim against the Union a "breach of contract" claim, the Court has held that it is actually a claim for a breach of the duty of fair representation.  *See* Memorandum and Order of March 6, 2007 [Doc. # 21]; Memorandum and Order of April 9, 2007 [Doc. # 26].

at 621.  Just as Smith's claims against the Union are time-barred,[30] her hybrid claim under § 301 is also barred.  Thus, Defendant is entitled to summary judgment on this claim.[31]

###        C.    "Denial of Federally Guaranteed Rights" Claim

Smith's final cause of action alleges that she was "deni[ed] . . . federally guaranteed rights" when "Defendants failed to file a grievance on her termination."[32] However, while Smith makes one reference to "Defendants" in the six paragraphs comprising this claim, the claim as a whole appears to implicate only her Union.[33] Indeed, the USPS raises no arguments in support of summary judgment on this claim.[34]

---

[30]   *See supra* note 4.

[31]   The USPS also argues that Smith's breach of contract claim is preempted by Title VII. Because the Court finds that Smith's claim is time barred, it does not reach the preemption argument.

[32]   Original Complaint [Doc. # 1], at 7, § VIII, ¶ 3.

[33]   *See id.* at 7, §  VIII, ¶ 2 ("Plaintiff . . . [is] . . . a member in good standing of [L]ocal 283, National Association of Letter Carriers, AFL-CIO."), ¶ 3 ("Defendants failed to file a grievance on [Plaintiff's] termination.  Plaintiff alleges that as a member in good standing of the Union, that the Union was required to represent her, and that it failed to do so."); ¶ 5 ("Defendant Prissy Grace, as President of [Plaintiff's Union], knowingly and [sic] interfered with and purposely sought to deny Plaintiff's legally guaranteed union rights . . . .").

[34]   Though the USPS raises no arguments in support of summary judgment on this claim, it is clear from its motion that it seeks summary judgment on all claims raised against it by Smith. *See* Defendant's Motion for Summary Judgment [Doc. # 27], at 1 ("Smith has filed this claim alleging race/color discrimination, age discrimination, harassment, hostile work environment, breach of contract[,] and denial of unspecified federal rights.  Each of the claims is without legal and factual support, and should be dismissed by summary order.").  That no arguments are raised regarding the "denial of federally guaranteed rights" claim appears to be due to the

(continued...)

Nonetheless, Smith's due process claim fails to state a legally viable claim.

First, any argument that the USPS breached a collective bargaining agreement by failing to file a grievance against itself to challenge its own termination decision makes no sense.  Further, Smith cites no authority establishing such duty on the part of the USPS to file grievances on behalf of its employees.  Thus, to the extent Smith relies on such a theory, it fails and this claim is dismissed.

Next, Smith, in her Response, appears to raise a new due process theory of relief not presented in her Original Complaint.  She argues that the USPS violated her "federally guaranteed" due process rights when it terminated her employment because the USPS impermissibly relied on the allegations underlying her suspension to justify her termination, while the suspension was the subject of a pending Union grievance. This theory, too, fails.

First, Smith's argument relies on her flawed proposition that "the arbitration award [finding that the USPS had insufficient grounds to justify her emergency suspension] is res judicata and collateral estoppel as to the issue of the Postal Service's allegations against [Smith]."[35]  As the Court noted in Section III.A.1, *supra*, arbitration awards are not given preclusive effect in subsequent litigation.

---

[34]      (...continued)
         USPS's reasonable belief that no such claim was asserted against it.

[35]      Response [Doc. # 30], at 10.

Second, as a prerequisite to filing suit regarding an alleged wrongful termination by a federal agency, the plaintiff must first have raised her claim directly before the agency—in this case, the USPS. "[A]n aggrieved federal employee must elect an exclusive administrative remedy and fully exhaust the remedy chosen." *Taylor v. Dam*, 244 F. Supp. 2d 747, 757 (S.D. Tex. 2003). "Termination of employment triggers a right of administrative appeal to the Merit Systems Protection Board. Termination based upon [discrimination] creates a right of appeal to the Office of Equal Opportunity of the relevant department . . . ." *Hampton v. IRS*, 913 F.2d 180, 182 (5th Cir. 1990). Although Smith sought review of the USPS's termination decision through the USPS's EEO Office, it is clear from the EEO's Acceptance of Complaint[36] and the EEO's Final Agency Decision[37] that Smith never pursued claims of due process violations and that such claims were never considered by the EEO Office.[38] The failure to raise arguments bearing on a federal employee's wrongful termination claim waives those arguments

---

[36]    *See* Defendant's Motion for Summary Judgment [Doc. # 27], Ex. H: "Acceptance of Complaint."

[37]    *See* Original Complaint [Doc. # 1], Ex. A: "Final Agency Decision."

[38]    While Smith alluded to a due process violation in her EEO Complaint, *see* Defendant's Motion for Summary Judgment [Doc. # 27], Ex. A: "EEO Complaint of Discrimination in the Postal Service," the reference was vague. As demonstrated by the EEO Office's Acceptance of Complaint and Final Agency Decision, the EEO Office did not interpret Smith's Complaint to include any such claim. Smith was given an opportunity to correct the EEO Office's interpretation of the issues raised in her EEO Complaint, *see id.*, Ex. H: "Acceptance of Complaint," but there is no evidence that she did so.

in the district court.  *Beale*, 461 F.2d at 1140 ("[T]he doctrine of exhaustion of available administrative remedies requires a federal court plaintiff to establish that all claims which could have been entertained by the administrative agency involved were in fact presented to that agency for resolution."); *cf. McAdams v. Reno*, 64 F.3d 1137 (8th Cir. 1995) (failure to raise discrimination claims when pursuing administrative relief from an adverse employment action waives those claims in federal court); *Beale v. Blount*, 461 F.2d 1133 (5th Cir. 1972) (same); *cf. also Green v. Elixir Indus.*, 152 F. App'x 838, 840–41 (11th Cir. 2005); *Casimier v. U.S. Postal Service*, 142 F. App'x 201, 204 (5th Cir. 2005); *Rendon v. Potter*, No.SA-06-CV-875-XR, 2007 U.S. Dist. LEXIS 35386 (W.D. Tex. May 15, 2007), *Booty v. Potter*, No. H-05-079, 2007 U.S. Dist. LEXIS 13273 (S.D. Tex. Feb. 27, 2007).   Thus, as Smith did not properly raise her due process claims before the EEO Office or any other administrative body, she cannot raise them in this forum.  Summary judgment for the USPS is appropriate.

## IV.   CONCLUSION

Smith has provided no evidence that the USPS's decision to terminate her was impermissibly motivated by unlawfully discriminatory animus.   Thus, regardless whether the USPS reached the correct conclusion concerning Smith's conduct, the Court is without authority to intervene.  *See Pineda v. UPS*, 360 F.3d 483, 489 (5th Cir. 2004) ("[T]o establish that an investigation into an alleged violation of a workplace

policy was a pretext for discrimination, it is 'not sufficient [for the plaintiff] to present evidence that the . . . investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion.  He must show that the reason proffered by [the defendant] is false, *and* discrimination was the real reason.'" (quoting *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003))).

Smith has also failed to establish the existence of an issue of material fact concerning her "breach of contract" claim, which is time-barred, and her "due process" claim, for which she failed to exhaust administrative remedies.  It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 27] is **GRANTED** in its entirety.  This case is **DISMISSED WITH PREJUDICE**.

The Court will enter a separate final judgment.

**SIGNED** at Houston, Texas, this 15th day of January, 2008.

Nancy F. Atlas
United States District Judge